Good morning, Your Honor. Seth Kretzer. You may proceed. Yes, Your Honor. Can you hear me? Yes, we can. Okay, I apologize. Good morning. May I please the court, Seth Kretzer for Petitioner Proctor. Your Honor, it is a baseline principle of habeas doctrine that when a writ is filed subsequent to the initial writ, that writ is barred as secondary or successive. The qualification, of course, the dichotomy framed by Magwood, is that this is not the case if the new writ, in this case 2254, follows a new judgment. Now, obviously, in Mr. Proctor's case, we have an enormous amount of time following the first writ, which was resolved by this court in the year 1990, and the writ upon which I was appointed, which arose nearly three decades later. The issue on which COA was granted by the Article III judge in the Eastern District of Arkansas, was whether or not Mr. Proctor, in fact, received a new judgment under the construct of Magwood. An observation that the magistrate judge made in the report, which was adopted, that which I think the state, perhaps, respectfully minimizes in their brief, is that there is not, that anyone can find, a amended judgment entered by the state court. In other words, there's no doubt, over three decades of post-conviction litigation, Mr. Proctor has succeeded on exactly one of his claims. That is the reformation of his life sentence. This is in the 1983-74 case, among the litany of judgments that was entered against him back in the late 1980s, where that was reduced from life to the term of 40 years. And I would submit, Your Honors, that this is not an inconsequential or insignificant distinction, because, Your Honors, can you see me? I seem to only see the clock. Technology is not my strong suit. I apologize. I do not see you at the moment, but I'm going to proceed. Okay, I see you again. This is significant, Your Honors, because habeas relief, in any form, does not exist in a vacuum. Under the dichotomy, the continuum, phrased by Magwood, you have clearly ministerial changes to an amended judgment, such as changing the name of one of the parties. Perhaps, under the analogous case of Dyab, D-Y-A-B, from this circuit upon which the magistrate judge relied, you had changing of the identities of the restitution victims, one of the co-defendants, something like that. Well, there's no doubt what Mr. Proctor received here was a change from effectively death by incarceration for the rest of his life to stay in the prison to a term upon which the state admits standing alone made him immediately parole-eligible. Even before we talk about the developments in the Arkansas legislature, there's these other nine counts of conviction. Mr. Critchin, this is Judge Smith. You mentioned parole eligibility, which really is at the heart of the original filing in this case, is trying to obtain a reduction in such a way that parole eligibility became practical. What's the effect, if not mootness, of the current status of the case that there is parole eligibility? Yes, Your Honors. Mr. Proctor, certainly while that may have been his ultimate litigation goal over the last 40 years, being afforded parole eligibility is not a claim that one can bring in federal habeas. Federal judges don't have an inherent power to order parole eligibility. That is seen perhaps most extremely in the fact that parole was abolished in the federal system many, many years ago. Mr. Proctor brought a claim that his remaining sentences were violative of Graham because they were the functional equivalent of life. But before that claim could be reached by the federal court, there was the procedural impediment of whether or not this was a successive writ. So to say the order that came out in September 16th, I believe in the state's conception they call it Proctor 5, I'll call it September 16th, 2021 order, was certainly a welcome development from the perspective of Mr. Proctor and I as his lawyer were appreciative of it. And yet parole eligibility is not what he came to federal court requesting or could have requested of the federal court. So I would argue the issue is not moot at all. So what is the relief you're seeking at present? Yes, your honor, the relief we're seeking at present is for an amended judgment styled as such to be entered by the state district court who afforded the habeas relief. And Judge Smith, I would submit this is not a mere academic distinction. The state's brief directs the court to the Arkansas Parole Board website. I would submit that perhaps a better place to direct one's internet browser is actually to the Arkansas Department of Corrections website. The ARC doc has a very helpful website and they type in any inmate's name, but most specifically Mr. Proctor's. One sees all the litany of the judgments and they're all denominated in terms of years except for something happened in the 1983-74 matter because that's denominated in terms of 40 years. Well, certainly the state district court did not send up a letter to the, you know, Arkansas Department of Corrections. It seems that this needs to happen in an amended judgment. An amended judgment, Judge Smith, is how the Arkansas Department of Corrections or anything else. Mr. Kritzer, we're having some audio difficulties. If you just pause for just a second, hopefully our connection will get just a little more stable. We're having some audio issues and I basically missed your last couple of sentences. And so I hope that will clear up. So just to be helpful to us, take your time in expressing your thoughts and maybe we can be sure to obtain a good grasp of what you're conveying to us. And I apologize, Judge. I've been on this call for two hours and I didn't have any audio issues until about 10 minutes ago and I emailed Mrs. Riedel to say I apologize. I can hear and see you. Can you hear and see me? Yes, it's much better right now. Okay, I certainly hope to argue in front of you all in person at some point in the near future. Our point would be, Judge Smith, that the relief that Mr. Proctor requests at present, as his case presents at present, is for an amended judgment to be signed and entered by the court in Arkansas that apparently believed it reformed his sentence from life to 40 years a few years ago. We would submit this is not a merely academic distinction. Just on four corners of the facts of Mr. Proctor's case, the state's brief directs the court to a link from the Arkansas Parole Board. I would submit that the more relevant place to direct its browser is to the website for the Arkansas Department of Corrections, a very helpful website there if one types in an inmate's name. When you type in Mr. Proctor's name, you see each one of his sentences, convictions rather, and the associated sentences, and all of them are written in the pentameter of month except when one reads down to the 1983-74 matter where it says sentenced to 40 years. So we know necessarily somebody in the Arkansas Department of Corrections believed that Mr. Proctor's sentence had been removed from life to 40 years, and yet that cannot happen in a vacuum, Judge Smith. To quote from the Diab opinion of this court, on which the magistrate rested her recommendation, and upon which my friend Mr. Harris would agree, is his case, quote, the sentence is the judgment in a criminal case. And when this court says that, it is quoting from a Supreme Court case called Berman in the year 1937. So a very venerable piece of law. The sentence is the judgment. An essential element under the concept of Magwood, and I think this is a deadline that's triggered in habeas litigation, of a judgment. And yet, no one can point to where this amended judgment is in this case. And we would hope to move this case. I get that. But I think that the real question on whether or not that particular issue is really before us. I mean, if you look at the petition that was filed in the district court, essentially what Mr. Proctor claimed is that there was a disproportionate sentence that was de facto life without parole. The second thing he said is that he had ineffective assistance of counsel and abusive discretion that are fundamental violations of his right to a trial. And then if you look at his notice of appeal, he just appeals from the judgment, which basically is just a judgment that says it's been considered ordered in a judge that the writ for habeas corpus is dismissed without prejudice. And it's signed by Judge Wilson. And, you know, looking at that, I'm having a hard time figuring out where this sort of question that you're arguing is really even before us here, because the relief that he sought was to be eligible for parole. That's happened. And so at this point, what relief is still on the table that we could even consider? Yes, Judge Harrison, my answer to that would be, first, yes, Mr. Proctor was not appointed until thereafter. And yes, Judge Wilson did enter for judgment. But on that same day, I believe the immediately preceding docket entry, he did say he was granting COA as to whether or not the court's conclusion that Mr. Proctor's life sentence resulted in intervening new judgment was the claim of granting COA. And so certainly Mr. Proctor did not plead a request for relief that he be among his numerous claims, that he be granted a new judgment, a written amended judgment from the state court. That's necessarily part of what was appealed, because the district court's narrowest read of its resolution of the matter was that he was procedurally barred because it was successive following this new judgment. So while he did not plead a request for that, that's sort of implicit. I get that. But my question is that, all right, certificate of appealability is granted. On this record, there's still no other issue for us to consider because the relief that he sought, he has been granted. He never asked to have a new judgment. What he asked for was to be not sentenced to a de facto life sentence, and that's gone. Yes. I understand that he is now, fortunately for him, and we're glad about, been made eligible by these recent enactments in the September opinion. That, we would argue, is a good thing. And yet, I would argue it's not moot because what was granted was COA in part on what served as a procedural bar to any sort of relief. Mr. Crutzer, this is Jed Smith. Help me with what's the effect of the relief you seek. If you were, if, what would be the effect of obtaining the relief that you're asking for, which is a new judgment? And who, and I assume that has to take place at the state level. Yes. Yes, of course. The state district court would have to be the one to enter that amended judgment. At that point, Mr. Proctor, if he so chose, could seek to file, I guess in this concept, would be the third writ. And at that point, the federal court would have to analyze whether or not it's still procedurally barred or if he could try to present some other claim. What would that, what relief would he be seeking before the state court? Before the state court, yes, to an amended judgment that would cure the procedural barred effect, which would allow him to bring any other claims that he might try to bring afresh on a new writ that would be his third writ in this circumstance. I would submit to... But shouldn't that be in front of the state court? I mean, shouldn't you go in front of the state circuit or district court, wherever he was sentenced, and say, you should enter a judgment because there is no judgment in this case that is consistent with what the records reflect. And then the court's either going to say... And then you can present your new petition down there, exhaust it in the states, and then bring it back over here on a 2254 if you're not successful. But I mean, I'm just looking at what relief we could possibly afford you at this point on any substantive claim, other than to interfere with the state court procedures. Yes, Judge Harrison, to answer your question, that is the, in the brief that I offered in this court, that is the prayer for relief, but the conclusion is that it be remanded to the state court for entry of such judgment. I don't know that his matter being currently pending in federal habeas, he can show up, you know, and ask for relief that would affect the federal habeas in absence of some order of this court, or at least a remand to the district court to tell the state district court to do that. I see my time is massively dwindling. I would just submit in conclusion that yesterday, Mr. Harris filed a 28I letter where he brought to the attention an opinion from about two years ago in the Fifth Circuit where a similar issue arose in Louisiana, and I take it there the mootness issue was conceptualized that under Louisiana law, the life without parole sentence was reformed down to a life with the possibility of parole sentence, and they said this is all the relief you can get. Here, under Arkansas law, as it's always existed apparently, Mr. Proctor was able to go from a life sentence, which is never in recent history in Arkansas carried with it the possibility of parole, all the way down to a term of years sentence. We would argue that's an essential different characteristic why perhaps the issue was moot in that Fifth Circuit case in Louisiana, but we would contend it's not moot here. All right. Thank you, Mr. Koretsu. Mr. Harris? Good morning, Your Honor. Can you hear and see me? Yes, we do. Okay. Can I proceed? Please do. I can't see the clock from where I'm at, but I'll proceed. I think I have a good grasp on the time. Do you see a label with the CAA STL division somewhere on your screen? Okay. I see it. I'll pin that. All right. If you'll pin that, you'll see the clock. Thank you, Your Honor. I got it now. Thank you. All right. If it's okay, I'll go. Please. Good morning, Mr. Chief Judge, and may it please the court. Christian Harris for the Appalachian Dexter Payne. As you noted, when the district court here granted Mr. Proctor a certificate of appealability, it determined that one and only one of his federal claims had any debatable merit at all. That's his claim seeking relief from his 240-year aggregate sentence under Graham v. Florida. The remedy for a Graham v. Florida violation is to provide the juvenile non-homicide offender with a reasonable opportunity to demonstrate that he can be paroled in his lifetime. In other words, parole eligibility. And the recent retroactive amendment to the Arkansas Fair Sentencing of Minors Act has provided Mr. Proctor everything that he sought in his only claim that had debatable merit before this court. He is parole eligible now. He applied for parole last year, and he can reapply next year. And that means that there is no effectual relief whatever in the words of the mootness cases that an Article III court can give him. And what's more than that, because the Fair Sentencing of Minors Act is now retroactive and provides a 20-year window of parole eligibility for non-homicide juvenile offenders, all of them past and present, there will never be another Terrence Proctor who is in a position to make a de facto life sentence claim in a case arising under Graham in Arkansas. And it's not virtually certain, as Libertarian Party and more require, that the Arkansas legislature is about to try to claw back that amendment that they made only last spring. And so for that reason, this case is moot, and we would ask that you vacate this appeal on mootness grounds, remand it to the district court with instructions to dismiss the case. I'm happy to take any questions on either that or the procedural issue. The one thing I would note is that the certificate standard is conjunctive, so even if there's a live debatable procedural question, the substantive question has gone away. And from Slack versus McDaniel, we know that a debatable procedural issue and a debatable substantive issue are both prerequisites. And so one of those has gone away. The COA, any reason to be in front of this court has been removed. Well, let's just assume that for our discussion that it's not moot. How would the resulting revision of his effective life sentence down to 40 years, why would that not be a new judgment? Okay, thank you, Art. As for that Magwood issue, the reason there's no new intervening judgment here is because Arkansas' way of remedying violations of Graham, those Eighth Amendment violations, doesn't bear any resemblance to the plenary resentencing proceeding that was at issue in Magwood. And it also doesn't carry with it the possibility of introducing new errors into the sentence, which was the underlying rationale of Magwood. We know Magwood tells us two things about proceedings that... Magwood didn't set forth some general rule or a grand unified theory of new intervening judgments. It gave us a particular fact pattern that says, this is something that produces a new intervening judgment, and that is a plenary resentencing following the vacatur of a capital sentence. And that's a proceeding where the sentencer looks at all the evidence afresh, there's new evidence perhaps that could be adduced, considers the arguments of counsel, and then the sentencer considers from a range of permissible sentences what sentence is appropriate. And that carries with it the possibility of injecting new error into the sentence. The Graham procedure, which is the procedure Arkansas chose pursuant to Graham's instruction that the states are responsible in the first instance for implementing the procedures for remedying Graham violations, we chose Turner v. Hobbs. That is a mechanical sentence reduction that is in a sharply limited proceeding under the Arkansas habeas corpus statute. And as a side note, your honors, the Arkansas habeas corpus statute is not our general collateral review remedy. That's Arkansas rule of criminal procedure 37. The Arkansas habeas corpus statute largely embodies the common law of rid of habeas corpus. Jurisdiction of the sentencing court and invalidity on the face of the judgment. It lacks the plenary nature of that resentencing in Magwood. It is mechanical relief. It can only go from one thing to one thing, life to 40 years, which is the maximum sentence for a class Y felony in Arkansas. No other modifications of the judgment are permissible in a proceeding under Turner under the habeas rules. Not even, it doesn't take place in the original sentencing court. This one took place in a state habeas court in Lincoln County, rather than Pulaski County where Mr. Proctor pled guilty. There's no new evidence can be induced in that proceeding. It's not necessary or appropriate for attorneys to argue for what the right sentence is because there is only one sentence permissible, 40 years. Those issues were decided in Turner. It's not referred back to the original sentencing court. It's not a plenary resentencing in the same way or analogous to a federal 3582C2 resentencing. There's no possibility of additional error being injected into those proceedings because 40 years is unquestionably a legal sentence for the most serious type of felony in Arkansas, 40 years. For those reasons, the district court here thought a good analogy of a type of sentencing proceeding that's well understood not to present a new intervening judgment would be the federal 3582C2 proceedings. We have less discretion in a Turner proceeding than even a federal Article III court for doing one of those kind of resentencings because even in the event of a new retroactive amendment to the sentencing guidelines, the district court, even though it keeps everything else the same, the sentencing determinations that were made in the original sentencing proceedings, it can pick from a range. There is no range in a Turner proceeding. It's 40 years all the time. For those reasons, we don't think that this is a new intervening judgment if the court were to be inclined to determine that there's some form of relief that can be given to Mr. Proctor still no new intervening judgment in our estimation. One last point about the existence or non-existence of a piece of paper that says judgment, the state does not take the position that it matters what the judgment looks like or if there's a piece of paper that says judgment on the end of it. If it's an order that is of the type, plenary resentencing with the possibility of error, it doesn't matter if the court calls it an order reducing the sentence or not. In fact, there was an order entered by the Lincoln County Circuit Court in Mr. Proctor's habeas case in Proctor 5. If no such order had been entered, he would not have been able to take an appeal to the Arkansas Supreme Court because there wouldn't have been a final order entered. For those reasons, this court should dismiss this appeal because it's moot and remand to the district court to vacate the sentence and that's what we would ask the court to do. Thank you, Mr. Harris. I see no questions from my colleagues. Mr. Kretzer, your rebuttal? Yes, Your Honor. We'll give you a minute. Your time's exhausted, but we'll give you a minute. I understand. Again, any technological problems, I'm sure the fault was mine, but I think it is important to look at maybe some doctrinal holes that existed in the disposition of this case. The Article 3 judge, the magistrate judge were clear the closest they could fall in was DIAB, which was basically a case about restitution and whether or not it triggered a new judgment. If I didn't have any closer cases and if the state had closer cases to fill in that hole, they certainly would have done so. I think we should give this court pause. If we can get around the mootness argument and there's any grounds for justiciable controversy, this court should, I would command or suggest or urge, shed some light on this issue of what is required purposes of a new judgment under Madwood because if it is the situation that a state court could pretermit or impede federal habeas review by simply not entering something called a new judgment, there's every reason to think that in a very serious case, like an actual innocence case, a state court might do that in order to impede federal habeas review. I see my time has expired, but that's the grounds upon which I would urge the court to resolve the case. Thank you, Mr. Koretsu. Thank you also, Mr. Ayers. The court appreciates both counsel's presentations to the court this morning and your responses to our questions. We'll continue to review the submissions in the case and render decision in due court. Thank you, counsel. Thank you, your honor. Thank you very much.